1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2019

SEAN F. McAVOY, CLERK

4

5  # UNITED STATES DISTRICT COURT

6  ## EASTERN DISTRICT OF WASHINGTON

7  STANFORD R.,

   Plaintiff,

8  vs.

9  COMMISSIONER OF SOCIAL

10  SECURITY,

    Defendant.

No. 2:18-cv-00113-MKD

REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

11

12  ECF Nos. 14, 18

13      Before the Court for issuance of a report and recommendation are the

14  parties' cross-motions for summary judgment.  ECF Nos. 14, 18.  The Court,

15  having reviewed the administrative record and the parties' briefing, is fully

16  informed.  For the reasons discussed below, IT IS RECOMMENDED Plaintiff's

17  Motion, ECF No. 14, be denied and Defendant's Motion, ECF No. 18, be granted.

18

19

20

REPORT AND RECOMMENDATION - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

REPORT AND RECOMMENDATION - 2

1  ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5  *Sanders*, 556 U.S. 396, 409-10 (2009).

6  <center>**FIVE-STEP EVALUATION PROCESS**</center>

7        A claimant must satisfy two conditions to be considered "disabled" within

8  the meaning of the Social Security Act.  First, the claimant must be "unable to

9  engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do his previous work[,] but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy." 42 U.S.C. §

16  1382c(a)(3)(B).

17        The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

20  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

REPORT AND RECOMMENDATION - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

REPORT AND RECOMMENDATION - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 15, 2014, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset beginning December 17, 2008. Tr. 205-21. The application was denied initially, Tr. 136-39, and on reconsideration, Tr. 143-45. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on November 19, 2016. Tr. 35-80. On January 27, 2017, the ALJ denied Plaintiff's claim. Tr. 15-34.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 15, 2014. Tr. 20. At step two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; and bilateral epicondylitis. Tr. 20.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can no more than occasionally push/pull and frequently reach, handle, and finger with the bilateral upper extremities; he

can frequently balance and stoop, and only occasionally perform all
other postural activities; and he can have only occasional exposure
to extreme cold, vibration, and hazards such as unprotected heights
and moving mechanical parts.

Tr. 23.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 27.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: router, marker, and garment sorter.  Tr. 28.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from December 15, 2014, the date the application was filed, through the date of the decision.  Tr. 28.

On January 31, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him Title XVI supplemental security income benefits under the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

1    2.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

2  ECF No. 14 at 12.

3                                    **DISCUSSION**

4    **A. Medical Opinion Evidence**

5        Plaintiff challenges the ALJ's evaluation of the medical opinion of Kevin

6  Weeks, D.O.  ECF No. 14 at 14-15.  Plaintiff only specifically challenges the

7  ALJ's findings related to manipulative restrictions.  ECF No. 14 at 14-15.

8        There are three types of physicians: "(1) those who treat the claimant

9  (treating physicians); (2) those who examine but do not treat the claimant

10  (examining physicians); and (3) those who neither examine nor treat the claimant

11  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

12  *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

13  Generally, a treating physician's opinion carries more weight than an examining

14  physician's, and an examining physician's opinion carries more weight than a

15  reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

16  to opinions that are explained than to those that are not, and to the opinions of

17  specialists concerning matters relating to their specialty over that of

18  nonspecialists."  *Id.* (citations omitted).

19        If a treating or examining physician's opinion is uncontradicted, the ALJ

20  may reject it only by offering "clear and convincing reasons that are supported by

REPORT AND RECOMMENDATION - 8

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81

F.3d 821, 830-831 (9th Cir. 1995)).

Dr. Weeks conducted a consultative evaluation on October 19, 2013. Tr.

386-90. Dr. Weeks' diagnostic impressions were tumor at the base of the nose and

"[p]aresthesias in his legs with decreased sensation in his hands with nothing

corresponding to any sort of specific nerve pattern, having migratory paresthesias

of unclear origin." Tr. 389. On physical examination, Dr. Weeks noted decreased

sensation in the fingers and hands. *Id.* He opined "handling, fingering, and feeling

could be very difficult due to his decreased sensation in his hands." Tr. 389. The

ALJ gave this opinion little weight.

Plaintiff contends Dr. Weeks' opinion is "not rebutted in the medical

records." ECF No. 19 at 5. However, Dr. Weeks' opinion was contradicted by the

REPORT AND RECOMMENDATION - 9

1  opinion that Plaintiff could perform frequent[1] handling and fingering adopted by

2  the testifying medical expert Judy Panek, M.D., Tr. Tr. 42-53, and state reviewing

3  physician Howard Platter, M.D., Tr. 119-21.  Accordingly, the ALJ was required to

4  provide specific and legitimate reasons for rejecting Dr. Weeks' opinion.  *Bayliss*,

5  427 F.3d at 1216.  In this regard, Plaintiff's sole contention in his opening brief is

6  that "here, that was not done."  ECF No. 14 at 14.  However, it is insufficient for

7  Plaintiff to mention this possible argument, but fail to address or challenge any of

8  the ALJ's reasons for rejecting Dr. Weeks' opinion.[2]  *See Indep. Towers of Wash.*

---

10  [1] For Social Security purposes, "frequent" means "occurring from one-third to two-

11  thirds of the time."  Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5-6.

12  [2] Counsel has a duty to substantively brief the issues presented for this Court's

13  serious and just consideration.  Fed. R. Civ. P. 1; LCivR 1; Wash. Rule of Prof'l

14  Conduct 1.3.  This Court has previously admonished Plaintiff's counsel for

15  inadequate briefing.  *See, e.g., Rainey v. Comm'r of Soc. Sec.*, No. 2:17-cv-00271-

16  FVS (E.D. Wash. Sept. 25, 2018) (Report and Recommendation, ECF No. 17 at 6-

17  10) (adopted Oct. 11, 2018).  The absence of developed argument is an

18  unacceptable manner of advocacy and a disservice to the Plaintiff and the legal

19  profession.  Counsel is cautioned that the opening brief must include analysis

20  supported by citations to the record and an explanation why, in the context of the

REPORT AND RECOMMENDATION - 10

1    *v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be

2    accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.

3    1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

4    effort at developed argumentation, are deemed waived.  It is not sufficient for a

5    party to mention a possible argument in a most skeletal way, leaving the court

6    to . . . put flesh on its bones.").  Therefore, any challenges are waived, and the

7    Court may decline to review them.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*,

8    533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address

9    on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000

10   (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and

11   distinctly argued" in the party's opening brief).

12         Despite Plaintiff's waiver, the Court has considered Plaintiff's additional

13   contentions raised for the first time in the Reply, and finds the ALJ's rejection of

14   Dr. Weeks' opinion is supported by specific and legitimate reasons supported by

15   substantial evidence in the record.

16

17

18   _____

19   case, reversible error has occurred.  Counsel's continued failure to present

20   adequately supported issues could result in the imposition of sanctions.

REPORT AND RECOMMENDATION - 11

1   *1. Opinion Predates Adjudicative Period*

2   First, the ALJ noted Dr. Weeks' October 19, 2013 exam occurred "well

3   outside the adjudicative period,[3] over one year prior to the date Plaintiff filed his

4   SSI application.  Tr. 26.  The ALJ is required to consider "all medical opinion

5   evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20

6   C.F.R. § 404.1527(b)).  Indeed, the regulations indicate that medical opinion

7   evidence predating the claimant's filing can be relevant.  *See* 20 C.F.R.§

8   416.912(d) (stating that "[b]efore we make a determination that you are not

9   disabled, we will develop your complete medical history for at least the 12 months

10  preceding the month in which you file your application unless there is reason to

11  believe that development of an earlier period is necessary or unless you say that

12  your disability began less than 12 months before you filed your application.").

13  While the Ninth Circuit has held "[m]edical opinions that predate the alleged onset

14  of disability are of limited relevance," Plaintiff has alleged a disability onset date

15  of December 17, 2008, over four years prior to Dr. Weeks' examination and

16

17  ───────────────

    [3] Plaintiff is ineligible for SSI disability benefits for any month including and

18  preceding December 2014, the month he filed his SSI disability application.  20

19  C.F.R. §§ 416.330, 416.335; SSR 83-20.

20

1    opinion. *Carmickle*, 533 F.3d at 1164-65. On this record, this reason alone was

2    not a specific and legitimate reason to discount Dr. Weeks' opinion; however, the

3    ALJ's rejection of Dr. Weeks' opinion did not rest solely on its date. *See Brown v.*

4    *Comm'r of Soc. Sec.*, 532 F. App'x 688, 689 (9th Cir. 2013) (finding ALJ did not

5    err by rejecting opinions from prior benefits applications in favor of "more recent"

6    opinions and medical evidence which was consistent with the record as a whole).

7        *2. Inconsistent Examination Findings*

8        The ALJ also determined Dr. Panek's more recent opinion was consistent

9    with the record as a whole, whereas Dr. Weeks' opinion was inconsistent with the

10   record. A medical opinion may be rejected if it is unsupported by medical

11   findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

12   1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

13   2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v.*

14   *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may discredit physicians'

15   opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

16   Here, the ALJ found Dr. Weeks' opinion regarding Plaintiff's manipulative

17   restrictions "inconsistent with every other exam in the file." Tr. 26 (citing Tr. 382

18   (Apr. 2011: "No deficit to pinprick and lower extremities"); Tr. 395 (Feb. 2014);

19   Tr. 406 (June/July 2011: "really in no distress"); Tr. 458-59 (Jan. 2014: progress

20   note of Tobias Lopez, PA-C stating numbness in the hands is reportedly an

REPORT AND RECOMMENDATION - 13

"intermittent issue" for three years and "suspect[ing]" bilateral ulnar never

impingement causes numbness in the hands, but stating Plaintiff is capable of light

work); Tr. 525 (Oct. 2011); Tr. 549 (May 2015: "strong grips"); Tr. 555 (June

2015: normal physical exam); 561 (June 2015: noting "strong grips")).

Plaintiff points to evidence he contends substantiates his symptoms.  ECF

No. 19 at 4.  There is evidence in the record that Plaintiff reported symptoms of

hand weakness to providers.  ECF No. 19 at 2-4 (citing Tr. 458, 548, 560).

Plaintiff also points to a January 16, 2014 hospital visit where he was diagnosed

with "brachial neuritis or radiculitis, NOS" by the attending physician's assistant,

Mr. Lopez.  Tr. 534.  However, Plaintiff's counsel specifically questioned Dr.

Panek regarding this record and Dr. Panek opined that she did not feel it was a

"firm diagnosis" without EMG evidence to explain and document the abnormality.

Tr. 51-52.  Moreover, as the ALJ noted, the clinic notes from Mr. Lopez's

examination of Plaintiff on the same date indicate only that he "suspected" that

Plaintiff has "bilateral ulnar nerve impingement," but that Plaintiff was capable of

light work.  Tr. 458-59.  The ALJ reasonably concluded Dr. Weeks' opinion was

unsupported by the record as a whole.  The lack of record support for Dr. Weeks'

opinion regarding manipulative limitations was a specific and legitimate reason

supported by substantial evidence for rejecting his opinion.

REPORT AND RECOMMENDATION - 14

1

### 3. Inconsistency with Treatment Notes

2        The ALJ also found that Dr. Weeks' opinion was inconsistent with Dr.

3  Weeks' examination notes documenting Plaintiff's own report to Dr. Weeks

4  regarding his capabilities.  Tr. 26.  "Incongruity" between a doctor's medical

5  opinion and treatment records or notes is a specific and legitimate reason to

6  discount a doctor's opinion.  *Tommasetti*, 533 F.3d at 1041.  In addition, an ALJ

7  may discount a medical source opinion to the extent it conflicts with the claimant's

8  daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th

9  Cir. 1999).  Dr. Weeks opined that handling, fingering, and feeling would be "very

10  difficult," but upon examination he recorded that Plaintiff could use his hands for

11  buttons and zippers, shoelaces, cleaning teeth, caring for hair, turning doorknobs,

12  and signing his name.  Tr. 26; *see* Tr. 387 (Oct. 2013: "He uses hands for buttons

13  and zippers, shoelaces, cleaning teeth, caring for hair, turning doorknobs. . . .

14  Signing his name, he can do that. . . . He is wearing lace-up shoes and socks. . . .

15  He could take his shoes off and put them back on again.  He was able to turn a

16  doorknob and pick up a coin from the desk").  The conflict between Dr. Weeks'

17  functional assessment and his examination notes and Plaintiff's daily activities was

18  a specific and legitimate reason supported by substantial evidence for rejecting his

19  opinion regarding manipulative limitations.

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

### 4. *Lack of Medically Determinable Impairment*

Finally, the ALJ assigned Dr. Weeks' opinion regarding manipulative limitations little weight was because it was "not connected to any medically determinable impairment." Tr. 26. The ALJ is only required to include in the RFC limitations and restrictions that are "attributable to medically determinable impairments." SSR 96-8p at *4. The regulations confirm that a symptom is not a medically determinable impairment and "no symptom by itself can establish the existence of such an impairment." SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996). At step two, which Plaintiff does not specifically challenge, the ALJ thoroughly analyzed Plaintiff's complaints of paresthesias. Tr. 22-23. Relying upon the testimony of Dr. Panek, the ALJ found that Plaintiff's exam findings demonstrated intermittent complaints with no known etiology. Tr. 22-23. The ALJ also commented that even Dr. Weeks reported the "migratory paresthesias" were of "unclear origin" with "nothing corresponding to any sort of specific nerve pattern." Tr. 26. Plaintiff's report about his symptoms is, alone, insufficient to establish a physical impairment as medically determinable. The Court notes that despite finding no medically determinable impairment related to Plaintiff's hands, the ALJ nevertheless continued his assessment through the sequential evaluation and adopted Dr. Panek's frequent manipulative limits "to provide for the objective evidence in this record." Tr. 23. The lack of medically determinable impairment

1  related to Plaintiff's manipulative claims was a specific and legitimate reason for

2  rejecting Dr. Weeks' more restrictive opinion.

3      **B. Plaintiff's Symptoms Claims**

4          Plaintiff faults the ALJ for failing to rely on reasons that were clear and

5  convincing in discrediting his subjective symptom claims related to his hands.

6  ECF No. 14 at 13.  An ALJ engages in a two-step analysis to determine whether to

7  discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016

8  WL 1119029, at *2.  "First, the ALJ must determine whether there is objective

9  medical evidence of an underlying impairment which could reasonably be

10 expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at

11 1112 (quotation marks omitted).  "The claimant is not required to show that [his]

12 impairment could reasonably be expected to cause the severity of the symptom

13 [he] has alleged; [he] need only show that it could reasonably have caused some

14 degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

15         Second, "[i]f the claimant meets the first test and there is no evidence of

16 malingering, the ALJ can only reject the claimant's testimony about the severity of

17 the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18 rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

19 omitted).  General findings are insufficient; rather, the ALJ must identify what

20 symptom claims are being discounted and what evidence undermines these claims.

1  *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 (requiring the ALJ to

2  sufficiently explain why it discounted claimant's symptom claims).  "The clear and

3  convincing [evidence] standard is the most demanding required in Social Security

4  cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

5  *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

6         Factors to be considered in evaluating the intensity, persistence, and limiting

7  effects of an individual's symptoms include: 1) daily activities; 2) the location,

8  duration, frequency, and intensity of pain or other symptoms; 3) factors that

9  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

10 side effects of any medication an individual takes or has taken to alleviate pain or

11 other symptoms; 5) treatment, other than medication, an individual receives or has

12 received for relief of pain or other symptoms; 6) any measures other than treatment

13 an individual uses or has used to relieve pain or other symptoms; and 7) any other

14 factors concerning an individual's functional limitations and restrictions due to

15 pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

16 416.929(c)(1)-(3) (2011).  The ALJ is instructed to "consider all of the evidence in

17 an individual's record," "to determine how symptoms limit ability to perform

18 work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

19        The ALJ found that Plaintiff's medically determinable impairments could

20 reasonably be expected to cause "some" of the alleged symptoms, but that

REPORT AND RECOMMENDATION - 18

Plaintiff's statements concerning the intensity, persistence, and limiting effects of

his symptoms were not entirely consistent with the evidence.  Tr. 24.

Plaintiff only objects to the ALJ's rejection of Plaintiff's testimony

regarding his manipulative limitations.  ECF No. 14 at 13.  The ALJ provided a

number of reasons for rejecting Plaintiff's testimony regarding sensation loss in his

hands and inability to open jars, button buttons, tie his shoes or write more than a

paragraph.  Tr. 24-25.  Plaintiff failed to address any of the ALJ's evaluation of the

evidence in his opening brief or in the Reply.  ECF No. 14 at 13, ECF No. 19.

Such undeveloped arguments are considered abandoned or waived.  *Indep. Towers*

*of Wash.*, 350 F.3d at 929.  Despite Plaintiff's waiver, the Court has reviewed the

record, agrees with the Defendant's position, and finds clear and convincing

reasons support the ALJ's rejection of Plaintiff's subjective symptom claims

related to the use of his hands.

### 1. Inconsistent Statements and Exaggeration

The ALJ found that Plaintiff's symptoms claims were undermined by his

inconsistent reports to his own providers and perhaps slightly exaggerated at the

hearing.  Tr. 25.  In evaluating a claimant's symptom claims, an ALJ may consider

the consistency of an individual's own statements made in connection with the

disability review process with any other existing statements or conduct made under

other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The

REPORT AND RECOMMENDATION - 19

ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59.  The ALJ may appropriately consider a plaintiff's tendency to exaggerate.  *See Tonapetyan*, 242 F.3d at 1148 (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.).  The ALJ observed several instances where Plaintiff's statements were inconsistent.  For example, Plaintiff testified at the hearing that he was unable to open jars, do buttons or tie his shoes, Tr. 69-70, but he reported to Dr. Weeks that he could use his hands for buttons, zippers, shoelaces, cleaning teeth, caring for hair and turning doorknobs.  Tr. 25 (citing Tr. 387).  The ALJ also noted that Plaintiff had a "dramatic presentation at the hearing with perhaps a little exaggeration," because he also testified, he had over 100 appointments and 14 surgeries for his basal cell carcinoma, which did not match the record.  Tr. 25.  Both Plaintiff's inconsistent statements and the tendency to exaggerate provided a permissible reason for discounting Plaintiff's reported symptoms.

REPORT AND RECOMMENDATION - 20

### 2. *Lack of Supporting Medical Evidence/Medically Determinable Impairment*

The ALJ found the limitations reported by Plaintiff regarding his hands were not supported by the medical evidence. Tr. 25. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). The ALJ set out, in detail, the medical evidence regarding Plaintiff's alleged intermittent sensation loss in his hands and concluded that his allegations were inconsistent with substantial evidence. Tr. 22-25. For example, the ALJ noted that Plaintiff's testimony that he was limited with the use of his hands was inconsistent with the record of "intermittent sensation loss," Tr. 24, and Dr. Weeks' observation of "strong handgrips" bilaterally and his ability to put on his lace-up shoes, turn a doorknob, and pick up a coin from a desk. Tr. 25 (citing Tr. 387). The ALJ further noted his testimony "is rebutted by every medical opinion in the file except by Dr. Weeks . . . whose opinion is unconnected to any medically determinable impairment." Tr. 25 (describing opinions of Dr. Panek, Joan Begley, PA, Dr.

REPORT AND RECOMMENDATION - 21

1    Platter, Mr. Lopez, and Dr. Weeks).  As found above, the ALJ reasonably

2    concluded Dr. Weeks' opinion was inconsistent with the medical evidence.  Tr. 26

3    (citing Tr. 382 (Apr. 2011: "No deficit to pinprick and lower extremities"); Tr. 387

4    (Oct. 2013: "He uses hands for buttons and zippers, shoelaces, cleaning teeth,

5    caring for hair, turning doorknobs. . . . He could take his shoes off and put them

6    back on again.  He was able to turn a doorknob and pick up a coin from the desk");

7    Tr. 395 (Feb. 2014); Tr. 406 (June/July 2011: "really in no distress"); Tr. 458-59

8    (Jan. 2014: progress note of Tobias Lopez, PA-C stating numbness in the hands is

9    reportedly an "intermittent issue" Plaintiff has had for three years and

10   "suspect[ing]" bilateral ulnar never impingement causes numbness in the hands,

11   but stating Plaintiff is capable of light work); Tr. 525 (Oct. 2011); Tr. 549 (May

12   2015: "strong grips"); Tr. 555 (June 2015: normal physical exam); 561 (June 2015:

13   "strong grips")).

14        The ALJ reasonably considered the medical evidence and concluded it did

15   not support the severity of Plaintiff's symptoms related to his hands.  This finding

16   is supported by substantial evidence.

17        *3.  Lack of Treatment*

18        The ALJ discounted Plaintiff's symptom claims because of the "very limited

19   treatment record presented in this case since the alleged onset date."  Tr. 25.  An

20   unexplained, or inadequately explained, failure to seek treatment or follow a

1    prescribed course of treatment may be considered when evaluating the claimant's

2    subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Plaintiff

3    received no treatment for the loss of sensation in his hands.  This finding is

4    supported by substantial evidence and was a clear and convincing reason to

5    discount Plaintiff's symptom complaints.

6        *4.  Work History and Reason for Stopping Work*

7        Finally, the ALJ took note of Plaintiff's work history and reason for stopping

8    work.  Tr. 25.  When considering a claimant's contention that he cannot work

9    because of his impairments, it is appropriate to consider whether the claimant has

10   not worked for reasons unrelated to his alleged disability.  *See Tommasetti*, 533

11   F.3d at 1040; *Bruton*, 268 F.3d at 828 (sufficient reasons for disregarding

12   subjective testimony include stopping work for nonmedical reasons and failure to

13   seek care for allegedly disabling condition at the time claimant stopped work).

14   Here, the ALJ noted that Plaintiff's work history indicates "sparse and irregular"

15   earnings for the 15 years prior to alleged disability onset, and that it appeared he

16   continued to work at about the same level after the onset date.  Tr. 25; *see* Tr. 419

17   (Oct. 12. 2009 progress note indicating Plaintiff's father was training him to drive

18   the delivery truck).  The ALJ also noted Plaintiff made statements to providers

19   after the alleged date of onset that he ceased work after his father died and the

20   family sod business closed, reasons that are unrelated to his impairments.  Tr. 25

REPORT AND RECOMMENDATION - 23

(citing Tr. 440); *see also* Tr. 420 (December 15, 2008 progress note stating Plaintiff was apparently filmed by Labor and Industries loading sod and discontinued his benefits). The ALJ concluded this raised a "question about whether his unemployment has anything to do with his medical conditions." Tr. 25. Although this finding considered singly might not have constituted substantial evidence, when it is considered in conjunction with the other reasons provided by the ALJ, the Court concludes this was another clear and convincing reason to discount Plaintiff's symptom complaints.

In sum, the ALJ provided several clear and convincing reasons to discredit Plaintiff's symptom testimony. Plaintiff is not entitled to relief on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, be **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, be **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

## OBJECTIONS

REPORT AND RECOMMENDATION - 24

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

REPORT AND RECOMMENDATION - 25

The District Court Executive is directed to enter this Report and

Recommendation, forward a copy to counsel, and **SET A CASE**

**MANAGEMENT DEADLINE ACCORDINGLY.**

DATED March 20, 2019.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 26